## Case No. 1,485.

### BLAIR v. FIRST NAT. BANK.

[2 Flip. 111; 10 Chi. Leg. News, 84; 5 Reporter, 40; 2 Browne, Nat. Bank Cas. 173; 12 Bankers' Mag. (3d S.) 721.][1]

Circuit Court, N. D. Ohio. Dec. 1, 1877.

NEGOTIABLE INSTRUMENTS — BANKS — AUTHORITY OF CASHIER—NOTE PAYABLE TO HIM—PRESUMPTION AS TO OWNERSHIP — INDORSEMENT OF PAPER BY HIM — PAPER NOT AUTHORIZED BY DISCOUNTING COMMITTEE—ACCOMMODATION PAPER— INDORSEMENT — OFFICERS MAY BORROW MONEY OF THE BANK.

1. A note payable to M., cashier, is a note payable to the bank.

[See Newberry v. Baldwin, Case No. 892.]

2. M., as cashier, has authority to assign notes.

[See Newberry v. Baldwin, Case No. 892.]

3. When the note is payable to M., cashier, the presumption is that it is the property of the bank; and if indorsed by the cashier to another bank for discount, it would be in effect asking the bank to discount it for the bank of which M. was cashier; and if discounted and the proceeds were received by the cashier it would be deemed the transaction of the bank, and within the scope of the cashier's duties and for which the bank would be liable. Nor does it matter what the defendant did with the money.

[See Newberry v. Baldwin, Case No. 892.]

4. The president, cashier or director of a national bank may borrow money of the bank as other persons.

5. Whether paper has or has not been authorized by the discounting committee of the bank does not in anywise affect parties who are bona fide indorsees before maturity.

6. A cashier has no authority to indorse accommodation paper so as to bind his bank, not passing through it in its usual line of business. The indorsement to bind the bank must be within the scope of his duties as cashier.

[See West St. Louis Sav. Bank v. Shawnee County Bank, 95 U. S. 557.]

[At law. Action by James A. Blair against the First National Bank of Mansfield upon a promissory note. Hearings upon demurrer to defendant's answer. Demurrer sustained. Charge to jury. Verdict for plaintiff, and motion for new trial. Overruled. Judgment for plaintiff.]

Slade & Kline and L. R. Critchfield, for plaintiff.

M. R. Dickey and H. C. Hedges, for defendant.

WELKER, District Judge. This suit is brought against the bank upon the following promissory note: "$5,000. Mansfield, Ohio, August 11, 1873. Ninety days after date I promise to pay to the order of R. H. McMann, cashier, five thousand dollars, at the First National Bank of Mansfield, in New York Exchange. Value received. Willard Hickox." Indorsed: 1st. "Pay D. P. Dildine, Esq., cash or order.—R. H. McMann, Cashier." 2d. "Pay J. A. Blair, or order.— D. P. Dildine."

The petition alleged the assignment by R. H. McMann, cashier of the bank, for and on behalf of the bank, to D. P. Dildine, before due, and for a valuable consideration, and by said Dildine, before maturity and for a valuable consideration, to the plaintiff, and avers the proper demand and notice on maturity to the First National Bank, etc.

The defendant answers, as a defense, that the note was received by the said R. H. McMann without any consideration therefor, and endorsed to Dildine, cashier, without any consideration to said national bank, and solely as a matter of accommodation for said Hickox. That Hickox was largely indebted to the bank at the time of the execution of said note, and that he and said McMann un-

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 5 Reporter, 40, and 2 Browne, Nat. Bank Cas. 173, contain only a partial report.]

lawfully and fraudulently colluded and combined to cheat the bank, and with said purpose and intent Hickox executed the note to McMann, and with said purpose and intent, and without any authority in law or fact therefor, McMann unlawfully and fraudulently endorsed and delivered said note to Dildine without receiving any consideration therefor for said bank.

To this answer the plaintiff files a general demurrer. The answer does not deny the assignment and transfer of the note by McMann, cashier, to Dildine, and by Dildine to the plaintiff, before maturity.

We may, therefore, in considering the plaintiff's demurrer, and the sufficiency of defendant's answer, regard the assignment to have been made before maturity and for valuable consideration paid by the plaintiff.

That being so regarded, all that part of the answer as to the consideration of the note, or its assignment to the plaintiff, constitutes no defense to the note in the hands of the plaintiff, if he be an innocent holder of the note.

The answer and demurrer raise two questions for determination: 1st. Whether the note payable to McMann, cashier, is a note payable to the bank? 2d. Whether McMann, as such cashier, had authority to assign the note? As to the first point: The Case of Bank of Genesee, 19 N. Y. 313, was a suit on a note payable to "the order of S. B. Stokes, Cash.," at the Bank of New York. and by him endorsed by the name of "S. B. Stokes, Cash." It was held by the court that the note was payable to the bank. Judge Denio in that case says: "In the absence of any evidence to connect the bill with defendant's bank, he would be regarded as the payee and indorser individually, and the abbreviation affixed to his name would be considered as descriptio personae. But when it has been shown that he was the defendant's cashier, the presumption would be that the note payable in that form, was the property of the bank, and when he endorsed it with the addition mentioned, and sent it to the plaintiff in an official letter, for discount, it was the same thing as requesting the plaintiff to discount on behalf of the defendant's bank."

It was also held in that case, "that there being nothing in the circumstances to put the endorser upon inquiry, and he having discounted the bill in good faith, he was entitled to recover against the bank, although the bill was endorsed for the accommodation of a third party: the bank having no interest in it, but its governing officer authorized the endorsement and application for discount."

In [Baldwin v. Bank of Newbury] 1 Wall. [68 U. S.] 234, it is held by the court: "That where negotiable paper is drawn to a person by name with addition of 'cashier' to his name, but with no designation of the particular bank of which he was cashier, parol evidence is allowable to show that he was the cashier of a bank which is plaintiff in

the suit, and that in taking the paper he was acting as cashier and agent of that corporation."

These cases, I think, settle that the national bank was the owner of this note, although payable to McMann, as cashier; and that it was the paper of the bank.

2d. Had he authority to transfer and endorse the note?

In Morse on Banks and Banking (page 151) it is said, in speaking of the powers of a cashier, that "all its negotiable paper he may negotiate and transfer in its behalf, and to this end he may endorse it over, so as to bind the bank like any ordinary endorser on similar paper." Again: "The outside party dealing with him (cashier) in good faith, and without notice of the irregularity, holds the bank as if the transaction had been unobjectionable throughout. For it is the inherent power of the cashier, which he exercises simply by virtue of his office, to make the transfer, and no person can be required, in a case where no circumstances of suspicion put him upon inquiry, to go behind this authority. If the agent exceeds it, the matter lies wholly between himself and principal." See, also, 29 N. Y. 554.

Again: "That the cashier, by his indorsement of negotiable paper on behalf of the bank, will always bind the bank to the full extent that any individual endorser of like paper and in like form, would be bound, unless the holder of the endorsed paper took it with actual notice of some fact rendering the endorsement irregular and invalid."

It will be seen by the authorities that the powers of a cashier are very large. He is the general agent of the bank for all its banking transactions. Whether he have specific authority to do certain things or not, if within the scope of his general duties, the outside world have a right to presume the authority, and his acts bind the bank.

In this case the note was payable to the cashier of the bank, and by him endorsed in the regular course of business, we have a right to presume, to Dildine, cashier of another bank. and by him to the plaintiff. What circumstances of suspicion were there about the transaction to put the plaintiff on his guard that appear in the answer? It is a common practice among banks to receive negotiable paper. and forward, after endorsement by the cashier to another bank, and there re-discount the same.

There is no allegation in the answer that any of the matter therein set up was brought to the knowledge of the plaintiff, or that there were such circumstances surrounding the transactions therein set forth to put the plaintiff upon inquiry in purchasing the note.

The admitted relation of McMann to the bank was such that any person had a right to suppose the transaction was in the usual course of business.

In the absence of these facts in the answer, I do not think it a good defense, and

the demurrer thereto will be sustained. The case was then tried by a jury.

WELKER, District Judge, in his charge to the jury, made the following legal points:

1. The note being payable to "R. H. McMann, Cash.," is a note payable to the bank of which he was cashier.

2. If the evidence shows that McMann was the cashier of the bank (defendant), the presumption is, that the note payable in that form was the property of the bank, and if the cashier endorsed it as such, and sent it to the savings bank in an official letter for discount, it would be the same thing as requesting the savings bank to discount it on behalf of the defendant (bank).

3. If the note of Hickox was the note of the bank and so received by the cashier, and afterwards for the purpose of re-discounting, was endorsed by McMann as such cashier, and discounted by the savings bank, and the proceeds sent to the defendant, that was a transaction within the scope of the duties of the cashier, and for which the bank is liable, and it does not make any difference as to the right of the plaintiff, what the defendant did with the money thus received.

4. The president, cashier or director of a national bank may borrow money from the bank, as any other person may, and execute a valid note for the same, that will bind them as well as the bank receiving it; and such note is not void, nor, in the absence of fraud, can such note be repudiated or avoided by the bank by reason of that relation.

5. If the plaintiff purchased the note before maturity and for a valuable consideration and in good faith, the defendant cannot set up any defense to the same growing out of the consideration of the note, or for want of authority to make the note or the endorsement, unless he took it with actual notice of some fact rendering the endorsement irregular and invalid; or unless there was something in the circumstances of the transaction throwing suspicion upon it to put the plaintiff upon inquiry as to the character of the transaction.

6. If the indorsement of this paper by the cashier, and its being sent to the savings bank for discount was in the ordinary and usual line of banking business, then, that fact was not such a circumstance as would put the plaintiff upon inquiry, for he had a right to suppose it was legitimate and proper.

7. If the note was payable to some person not connected with the bank, but assigned to the bank and endorsed by the cashier, and presented by an outsider, to the savings bank for discount, that fact would be a circumstance to put the endorser upon inquiry as to the transaction, and the authority of the cashier to make such endorsement to bind the bank.

8. An outside party dealing with the cashier of a bank, in good faith and without notice of the irregularity, holds the bank as if the transaction had been unobjectionable throughout. For it is the inherent power of the cashier, which he exercises simply by virtue of his office to make the transfer, and no person can be required, in a case where no circumstances of suspicion put him upon the inquiry, to go behind this authority. If nothing appears upon the face of the paper, or in the circumstances connected with the assignment to throw suspicion upon it, the purchaser, before maturity, is not bound or required to make inquiry.

9. The fact whether paper has been authorized by a discounting committee to be discounted by a bank, or not so authorized, does not in any way affect an outside party who is a bona fide indorsee of the paper before maturity. Such action or want of action by the committee, does not in any way affect the validity of the paper when put into circulation.

10. Such committee being only part of the private machinery of the bank, devised for its own safety and advantage, the outside public is not in any way affected by its action in relation to commercial paper.

11. Accommodation paper in a legal sense means paper made without consideration therefor.

12. A cashier of a bank has no authority to endorse accommodation paper, not passing through his bank in its line of usual business, so as to bind his bank to the endorsee therefor. The endorsement to be binding upon the bank must be within the scope of his duties as such cashier.

13. If such circumstances of suspicion have been shown to exist as ought to have put the officers of the savings bank and the plaintiff upon inquiry before purchasing, they would be presumed to have either made the inquiry and ascertained the truth, or to have been guilty of a degree of negligence equally fatal to their claim to be considered bona fide purchasers.

14. That the fact that the plaintiff knew that Hickox, the maker of the note, was the president of the First National Bank (deft.) was not such a circumstance as would constitute notice to the plaintiff to destroy his character of innocent holder of the note, or put him upon the inquiry as to the character of the note.

15. The law presumes a consideration in every promissory note, because it is an obligation to pay money.

Verdict for the plaintiff.

Motion for new trial. 1. Because of error of the court in the law. 2. That the verdict was contrary to the law and the evidence.

Before EMMONS, Circuit Judge, and WELKER, District Judge.

EMMONS, Circuit Judge. The action is upon an endorsement by the defendant's

bank, as organized under the national banking law. The note was regularly endorsed in due course of trade, by the cashier of the defendant, for full consideration paid by the Tiffin Savings Bank. The latter bank transferred it for full consideration to the plaintiff before maturity. The defendant now moves for a new trial upon the ground that as it appeared the maker of the note was insolvent, was president of the bank, and, by connivance with the cashier, fraudulently obtained the discount of the note by the defendant, and that, in view of this fact, the court should have charged the jury, that inasmuch as the note was made by a person who was also president of the bank, that the discount per se was unlawful, and that the note on its face put the plaintiff upon inquiry, and authorized the defendant to prove, as against him, the want of consideration.

It is somewhat difficult to deal with such a proposition. If there is any possible defense in a case like this, it is only upon the broad ground that the president of a bank is incompetent in all cases to become a borrower from his bank, and that his paper is in all instances unlawful.

This is not a case of failure of consideration. The contract given in evidence is one for which the defendant received full consideration. The savings bank and its transferee, the plaintiff, have nothing to do with solvency or insolvency of the maker of the note. They dealt with the bank which endorsed it.

If there is any defense, it must be on the ground of illegality, that the transaction is ultra vires, or so at war with public policy as to become void at common law. If such grounds can be maintained, then, of course, all parties to an unlawful transaction can set that up as a defense.

No case has been referred to showing that a bank officer or director cannot borrow as freely as other persons, so as the loans are honest, and the borrowers do not themselves participate in authorizing the loan. On page 99 of Morse on Banking, after discussing the general doctrine, that so far as the bank itself is concerned (but not as to third persons), that it is unlawful for a director to vote upon a matter in which he is personally interested, it is added that: "In the absence of legislative prohibition there is no rule of the common law which prevents the making of a loan or discount to a director any more than to any other person." Cites Conyngham's Appeal, 57 Pa. St. 474.

The distinction is plain in principle, as it has always been recognized in actual administration, between being interested in a valuable contract and in borrowing money at a lawful rate of interest.

It has never been deemed a breach of trust for an officer of a corporation to borrow its money. Ang. & A. Corp. 296, 297, §§ 299, 300.

Cashier may transfer the securities of the bank in the usual course of business. It being entirely clear that a bank director or officer may, in the ordinary course of business, borrow money of the corporation, it would have been error for the judge to have charged the jury that the mere form of paper showing he had done so, was notice to the plaintiff of any fraud upon the bank. It is unnecessary to say that irregularities in the conduct of the internal affairs of a corporation do not bind third parties who had no notice, for here it does not appear that any irregularity had occurred. At the most, it is a fraudulent discount of paper to an insolvent party. In such a case the defendant concedes that a third party taking the paper from the bank itself, paying full consideration, may recover on its endorsement.

The motion for new trial is overruled, and judgment on the verdict.